UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GWEN ROUGEAU,

    Plaintiff,

vs.                                                                 Case No. 17-12669

DAPCO INDUSTRIES,                             HON. AVERN COHN

    Defendant.
_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 14)
## AND
## DISMISSING CASE

### I. Introduction

This is an employment discrimination case. Plaintiff Gwen Rougeau (Rougeau), an African-American, is suing her former employer, defendant Dapco Industries (Dapco) claiming race discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e.

Before the Court is Dapco's motion for summary judgment. For the reasons that follow, the motion will be granted.

### II. Background

The material facts as gleaned from the parties' papers follow.

#### A. Dapco Generally

Dapco manufactures fuel valves, filters, fittings, and other fuel handling components for the small engine market including recreational vehicles, personal watercraft and lawn car equipment. Dapco is family-owned and located in Dexter, Michigan. The company employs approximately 125 people, most of whom work as

assemblers of the various parts Dapco manufactures and sells.

Dapco provides its employees with an employee handbook which contains the company's Equal Employment Opportunity Policy. See Dapco's Exhibit 2 – Equal Employment Opportunity Policy and Dapco's Exhibit 3 – Open Door Policy. Dapco prohibits any forms of harassment, joking remarks, or other abusive conduct directed at employees because of their age, sex, race, and other protected groups under both federal and state law. Dapco also requires written notice of any complaint related to equal employment, i.e. harassment, which Dapco agrees to investigate and notify the employee of the resolution. See id. Dapco also prohibits workplace violence, including, but not limited to, aggressive verbal attacks, and conduct that threatens, intimidates, coerces or interferes with employees. See Dapco's Exhibit 4 – Workplace Violence Policy.

Regarding performance and discipline, Dapco's employee handbook provides for the option of progressive discipline but the company retains the right to terminate employees at will, to start progressive discipline at any level in the process, or immediately terminate an employee for cause. A final warning, for example, can be the first course of discipline and is considered active for six months. Further violations of any Dapco policy during that period can result in immediate termination. See Dapco's Exhibit 5 – Disciplinary Policy.

B. Rougeau's Employment at Dapco

Rougeau was hired by Dapco as an assembler on April 5, 2011. Assemblers sit at an area/table and assembles the different parts that Dapco manufactures. Assemblers assemble parts depending on the work area they are assigned to. Each

area/table typically has an assembler who is also a team leader. The team leader ensures that the assemblers have the correct parts to work with, follow the schedule, and complete their assigned tasks. The team leader is also responsible for the quality of the assembled parts.

During the majority of the time Rougeau worked at Dapco, she was an assembler. She then became a team leader on the afternoon shift. Fewer employees worked on the afternoon shift compared to the day shift. In February 2015, Rougeau's afternoon shift supervisor promoted her to group leader/night lead and Rougeau got a raise. Rougeau was the only African-American team leader at Dapco. A few months later, in July 2015, Dapco eliminated the assembly work on the afternoon shift and transferred those employees, including Rougeau, to the day shift.

After the transfer to the day shift, Rougeau retained her title of group leader and hourly rate (minus a $ .25 shift premium that affected all of the transferred employees. However, because all of the team leader positions on the day shift were filled, her supervisor, Jeff Carpenter, considered Rougeau "inactive" as a team leader. However, Carpenter stated at deposition that he does not recall telling Rougeau she was inactive and stated she still retained the authority of a team leader but did not have an actual team to lead. All of the Rougeau's employment evaluations in the record are very favorable.

Almost a year after being on the day shift, in April 2016, Rougeau received a Final Written Warning, which states in relevant part:

> On Tuesday, April 5, 2016, it was brought to the management's attention that you said inappropriate comments directed at another employee. The comments you made were considered threatening in nature. The exchange of

> words was overheard by at least one other co-worker in the are. It is unacceptable for any employee to use threatening language towards a co-worker.
>
> . . . .
>      Any additional occurrences of harassment of any type will result in further disciplinary action including suspension or immediate Separation of Employment from Dapco Industries. I have read and understand the terms of this Final Written Warning.

See Dapco's Exhibit 10 – Final Written Warning. This was Rougeau's first disciplinary action and Dapco investigated the incident before issuing the discipline. The Investigation Notes reveal that Rougeau told a co-worker, a Caucasian, to "keep my name out of your mouth." When the co-worker said she did not have to listen to her, Rougeau responded "say it [my name] again and you'll see bitch." The co-worker also complained that Rougeau was "cutting her off lately, stepping right in front of her."

A few months later, in August 2016, Rougeau was involved in another incident with a different co-worker, an African-American. According to Rougeau, she "bumped" this co-worker at their lockers. The co-worker responded to Rougeau by saying "if you bump me again, I'm going to slap the fuck out of you." In response, Rougeau stated: "Well slap me then. Go ahead and slap me." See Dapco's Exhibit 14 – Deposition of Rougeau. Dapco investigated. The Investigation Notes generally confirm Rougeau's version of the events. Dapco determined that both Rougeau and the co-worker were to blame for the incident.

That same day, August 15, 2016, Dapco terminated Rougeau. The Separation of Employment letter stated in relevant part:

> On Friday August 12, 206, it was brought to management's attention that your were involved in a verbal altercation with another employee. Management conducted a thorough investigation regarding the altercation. Based on the investigation it was determined that you were partially at fault. You have been

4

> involved in numerous altercations (employee issues) with co-workers in the past, these have been discussed with you.
> On April 12, 2016, you received a Final Written Warning for making inappropriate comments directed at another employee.
> Since you have not modified your behavior from previous discussions and you continue to involve yourself in situations that cause disruptions that lead to unproductive time., we are separating your employment with Dapco Industries, effective immediately.
> . . .

See Dapco's Exhibit 11 – Separation of Employment letter. The other employee involved received a Final Written Warning – which was her first disciplinary action.

During the course of her employment, Rougeau took notes which she presented at her deposition as evidence of race discrimination and retaliation. Rougeau explained at deposition that she began taking notes in 2010 or 2011 "just when little stuff started happening." See Dapco's Exhibit 12– Rougeau's Written Notes.

The Court has read the notes. They describe, generally, a litany of complaints from Rougeau about the actions of her co-workers that she felt were important to write down. These concerns include such things as they laughed about something that wasn't funny; Fred, another African American employee, would check his watch to see how much time co-workers spent in the bathroom. A statement that she has been harassed for three years and that a Caucasian employee was allowed to wear her hair down while assembling parts.

Rougeau's notes also cover things as employees trying to save chairs by hanging their coats on them; hearsay that a co-worker said something like she hoped they didn't hire any more black people in custodial positions; a co-worker said "oops" rather than "sorry" when she stepped on the back of Rougeau's shoes; a co-worker intentionally kicked a pan of parts with her feet so that it hit Rougeau's chair; and a

5

supervisor, in response to Rougeau's complaint that employees had their phones in their pockets on the assembly floor, said "I'm not the pocket police"

Rougeau also wrote about her Final Written Warning, stating that it was all a "lie" and that "they are not a fair group of management" and would not tell her what "threat" she had made to the co-worker, although Rougeau admits in an earlier note that she called the co-worker an "old has been bitch."

### III. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Rule 56 provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).

### IV. Analysis

### A. Count I - Race Discrimination

#### 1. Direct Evidence

##### a. Legal Standard

Title VII's anti-discrimination provision makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).2 Intentional discrimination claims under Title VII can be proven by direct or circumstantial evidence. DiCarlo v. Potter, 358 F.3d 408, 414 (6th Cir. 2004).

##### b. Application

Rougeau argues that she has direct evidence of discrimination. Specifically, Rougeau says that she was offended when the radio station that a Caucasian co-worker was tuned to played a song that had the word "n….r" in it. She also says that the co-workers sang along with the song, including saying the offending lyric. See Dapco's Ex. 14 - Dep. of Rougeau, Vol. 2 at pp. 153-155, 158. "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999). "Direct evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." Umani v. Michigan Dep't of Corr., 432 F. App'x 453, 458 (6th Cir. 2011). "Isolated and ambiguous comments are insufficient to support a finding of direct discrimination." White v. Columbus Metro. Hous. Auth., 429 F.3d 232, 239 (6th Cir. 2005). Comments made by individuals who

7

are not involved in the decision-making process regarding plaintiff's employment do not constitute direct evidence of discrimination. See Hopson v. DaimlerChrysler Corp., 306 F.3d 427 (6th Cir. 2012).

The song lyric is not direct evidence of discrimination. First, it is not a remark by anyone at Dapco. Second, there is no evidence that the co-worker intentionally played the song with the offensive word. Third, none of the co-workers who sang the song had any role in Rougeau's termination.

Rougeau also states in her response that she listed a number of other incidents of direct discrimination in her sworn answers to interrogatories, which are attached as Exhibit H to her response. A review of the answers, however, shows only that Rougeau believed she had experienced "numerous, repeated and serious hostile and discriminatory acts" and listed 17 items. Most of the acts have nothing to do with race. There are only three incidents which remotely relate to race. The first is that Rougeau was the only African-American team leader and she says she was not invited to the team leader meeting when she was placed on the day shift. This is not direct evidence of discrimination because when Rougeau was moved to the day shift, Dapco already had enough team leaders but let Rougeau keep her team leader title and pay. The fact that she was not at the meeting had nothing to do with her race. No reasonable juror could conclude otherwise.

The other two incidents involve hearsay statements. In one incident, Rougeau says that a co-worker told her that another co-worker made a statement that she hoped the company did not hire "any more black people in the area." In the other incident, Rougeau says that a co-worker told her that another co-worker made a derogatory

comment about a different African-American co-worker. Admissibility issues aside, neither statement is direct evidence of race discrimination. No reasonable juror would disagree.

2. Circumstantial Evidence

a. Legal Standard

Rougeau must therefore provide circumstantial evidence to survive summary judgment. Circumstantial evidence is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred. Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997). Analysis of a claim based on circumstantial evidence is guided by the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Provenzano v. LCI Holdings, Inc., 663 F.3d 806, 818 (6th Cir. 2011); see also Lytle v. Malady, 458 Mich. 153, 171-75, 173 n. 19 (1998); Hazel v. Ford Motor Co., 464 Mich. 456, 462-64 (2001).

Under the McDonnell-Douglas framework, Rougeau must first establish a prima facie case of discrimination by a preponderance of the evidence. See Lytle, 458 Mich. at 172. "A plaintiff claiming race-based discrimination supported only by circumstantial evidence must demonstrate that he (1) is a member of a protected class, (2) was qualified for the job at issue, (3) was subjected to an adverse employment action, and (4) was treated differently than a similarly situated non-protected person." Kuhn v. Washtenaw County, 709 F.3d 612, 624 (6th Cir. 2013) (citing McDonnell, 411 U.S. at 802). The fourth element can be shown either by evidence that a similarly situated worker was treated more favorably, or that the plaintiff was replaced by a person

9

outside the protected class. White v Columbus Metro Housing Auth, 429 F.3d 232, 240 (6th Cir. 2005).

If Rougeau establishes a prima facie case, a presumption of discrimination arises and the burden then shifts to Dapco to assert a legitimate, non-discriminatory reason for firing Plaintiff. Lytle, supra, at 173. Rougeau may then respond with evidence that Dapco's proffered reason is a mere pretext for discrimination. Id. Rougeau can rely on the same evidence to prove both pretext and discrimination if the evidence would enable a reasonable factfinder to infer that the employer's decision had a discriminatory basis. See id. at 178. Importantly, Rougeau may not rely solely on her subjective beliefs or opinions. Arendale v. City of Memphis, 519 F.3d 587, 601 (6th Cir. 2008).

### b. Application

Dapco says that assuming Rougeau meets the first three elements necessary to establish a prima facie case, she cannot meet the fourth element that she was treated differently than a similarly non-protected person. The Court agrees. The altercation that led to Rougeau's termination involved two African-American employees. They were treated the same. Rougeau was terminated because she was on a final written warning and her co-worker received a final written warning and could have been terminated if a further policy violation had occurred.

Moreover, even if Rougeau made out a prima facie case, Dapco has put forth a non-discriminatory reason for her termination - Rougeau's altercation with another co-worker while being under a Final Written Warning. Rougeau has not pointed to any evidence which shows this reason has no basis in fact or was a pretext for race discrimination.

3. Hostile Work Environment

a. Legal Standard

To the extent Rougeau is claiming a racially hostile work environment, to be actionable, the harassment must be severe and pervasive. An employer is automatically liable for harassment by a supervisor that results in a negative employment action such as termination, failure to promote or hire, and loss of wages. If the supervisor's harassment results in a hostile work environment, the employer can avoid liability only if it can prove that: 1) it reasonably tried to prevent and promptly correct the harassing behavior; and 2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. An employer will be liable for harassment by non-supervisory employees if it knew, or should have known about the harassment and failed to take prompt and appropriate corrective action (Exhibit 15 – EEOC webpage). In Blankenship v. Parke Care Ctrs., Inc., 123 F.3d 868 (6th Cir. 1997), the Sixth Circuit held that when co-worker harassment is at issue, an employer is liable "if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known." Id. at 873. Further, the court is required to look at the totality of the circumstances including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating and whether it unreasonably interferes with an employee's work performance. Isolated instances, unless extremely serious, are not actionable. Bowman v. Shawnee State University, 220 F.3d 455 (6th Cir. 2000).

b. Application

Here, there is no evidence that whatever harassment Rougeau alleges to have

experienced had anything to do with her race. On the first day of her deposition, Rougeau was asked many times how the conduct she was testifying about or the contents of her notes were in any way related to her claims of race discrimination or retaliation. In response, Rougeau speculated that the things she testified about all occurred because of her race. For example, Rougeau testified that she heard comments such as she was the boss's pet (he let her carry her phone on the floor because her brother was seriously ill) but none of those comments had to do with her race. When Rougeau was not invited to a team leader meeting after being placed on the day shift, she said "it looked" like she was excluded because of her race. Rougeau also testified that someone was taking labels off of her boxes of completed parts but had no idea whether that was because of her race. Rougeau also testified about a part being taken out of one of her completed boxes. When asked why she thought that had occurred she stated:

> Q. And you think that's because you're black?
> A. I think it was because I was being harassed…and possibly because I'm black, yes.

See Dapco's Exhibit 13 – Deposition of Gwen Rougeau, Volume 1, p. 110. Rougeau also testified she was discriminated against because she heard that a brother of one of her co-workers was prejudiced. See id. at Volume 1, p. 118.

On the second day of her deposition, Rougeau again described the co-worker kicking a pan of parts that hit her chair but could not say why that act constituted race discrimination or harassment. See Dapco's Exhibit 14- Deposition of Gwen Rougeau, Volume 2, pp. 133-134. Rougeau also stated that co-worker was trying to boss her around and was upset when Rougeau was promoted to team leader but, also could not

12

describe how this constituted race discrimination or harassment. See id. at Volume 2, pp. 137-138, 140-142. Also, a co-worker did not congratulate Rougeau when she was promoted to team leader. See id. at Volume 2, p. 144. Rougeau further stated that she did tell a supervisor that she was not going to be treated different but never mentioned race, stating only "I think he knew what I meant". Id. at Volume 2, p. 177. Rougeau also testified that she thought it was racist when a co-worker called her a bitch but admitted that she had called the co-worker a bitch too.

### 4. Conclusion

Overall, Rougeau has not met her summary judgment burden as to whether she was terminated because of her race or was subjected to a racially hostile work environment. Dapco is entitled to summary judgment on Count I.

## B. Count II - Retaliation

### a. Legal Standard

Title VII prohibits retaliation against employees for complaining about employment practices and conditions that are protected by the statute. 42 U.S.C. §§ 2000e-3(a) and 2000e-16(a); Laster v. City of Kalamazoo, 746 F.3d 714 (2014). A prima facie case of Title VII retaliation requires proof that the plaintiff engaged in activity protected by Title VII, her exercise of such protected activity was known by the defendant, the defendant took an action that was materially adverse to the plaintiff, and a causal connection existed between the protected activity and the materially adverse action.

### b. Application

13

Rougeau alleges that she made at least 8 complaints to Dapco "about the hostile work environment and about the different and discriminatory treatment she experienced" but management never investigated or resolved them. The record does not support her assertion. Although she did go to her supervisor and Human Resources with complaints or concerns about the workplace, Rougeau did not mention her race as affecting the terms and conditions of her employment, discipline or termination. Moreover, even assuming her complaints would have alerted Dapco that Rougeau was claiming race discrimination, Rougeau fails to show any connection between her complaints and her termination.

C.  In Sum

At the end of the day, it is fair to say that after she was moved to the day shift, Rougeau had issues with several co-workers, Caucasian and African-American, which resulted in her termination.

Rougeau has offered no evidence of direct discrimination, no evidence that she was treated differently than a similar situated employee, no evidence that Dapco's reason for terminating her employment was a mere pretext for discrimination and, no evidence that she experienced severe and pervasive harassment because of her race. At best, she relies on several instances of essentially petty employee grievances which are not actionable. In Burlington Northern Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, (2006). the Supreme Court distinguished material adversity from "trivial harms." In doing so, the Supreme Court recognized that Title VII "does not set forth a general civility code for the American workplace" and an employee is not immunized "from those petty slights or minor annoyances that often take place at work and that all employees

experience." Id. Finally, as Rougeau never complained about racial discrimination or harassment to any supervisor therefore making it impossible for Dapco to retaliate against her because of her complaints. Dapco is entitled to summary judgment.

One final point. At the hearing on Dapco's motion, counsel for Rougeau cited Yazdian v. ConMed Endoscopic Techs., Inc., 793 F.3d 634 (6th Cir. 2015) in support. Yazdian, however, was a very different case. In Yazdian, the Sixth Circuit court reversed a grant of summary judgment in a Title VII case, finding a question of fact whether the employer had retaliated against the plaintiff for engaging in protected activity – plaintiff's complaints to his supervisor about a hostile work environment and threats to sue. The defendant argued that plaintiff's termination was based on the plaintiff's combative "tone," i.e., his "communication style, rather than substance." Id. at 649. However, the Sixth Circuit found that there were two reasonable interpretations of the evidence—that the plaintiff was terminated because of his tone or because of his stated opposition to the hostile environment and his threat of suit—requiring a jury to sort out which factor actually motivated the employer. Id. The Sixth Circuit also relief on case law which finds that summary judgment is inappropriate where there is a conflict between an employer's evaluation of subjective criteria and the employee's evidence of proscribed animus. Id. at 648–649 (citation omitted).

Here, Rougeau has not produced any evidence that Dapco was motivated by racial animus. There are also no competing interpretations of the evidence that a jury must sort out. Here, Rougeau was terminated because of her behavior, not because of her race or because of any complaints she made.

V. Conclusion

For the reasons stated above, Dapco's motion for summary judgment is GRANTED. This case is DISMISSED.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 5/29/2019
     Detroit, Michigan